COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia


HORACIO MORALES GALLARDO

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1040-23-4                      JUDGE FRANK K. FRIEDMAN
                                                    OCTOBER 1, 2024
ROSA MARINA CARRANZA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David S. Schell, Judge Designate

William F. Mason (Mason & Black, LLP, on briefs), for appellant.

M. Pilar Falo (Erin Bayles; Violet Soliz; Salvado, Salvado &
Salvado, P.C., on brief), for appellee.


Horacio Morales Gallardo (husband) appeals a final decree of divorce from Rosa Marina

Carranza (wife).  The case raises questions involving how a trial court should handle fact-finding

when one spouse controls much of the couple's money—and that party is not particularly

loquacious in detailing financial transactions.  On appeal, husband argues that the circuit court

erred by awarding wife a portion of the equity of the former marital residence without first valuing

the property.  Husband also argues the circuit court erred in splitting the couple's bank accounts

equally as of the date of the separation, without making appropriate findings required by Code

§ 20-107.3(E).  Husband also challenges the circuit court's refusal to admit his pre-marital financial

documents and the circuit court's classification of certain debt.  Finally, husband challenges the

spousal support award to wife.  For the following reasons, we affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Starr v. Starr*, 70 Va. App. 486, 488 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). Before husband and wife married in 2012, wife sponsored husband's application for permanent residency in the United States. After they married, wife lived in her own home located on Radford Street in Alexandria, Virginia (Radford property), with her adult children. Husband lived in an apartment with his parents until 2014, when he and his brother purchased a home together on Valley View Drive in Alexandria, Virginia (Valley View property).

After husband moved into the Valley View property with his parents and brother, wife lived there approximately three or four days a week. When she was there, wife cleaned, cooked, and helped care for husband's parents. Wife kept the Radford property because her adult children continued to live there. The Valley View property was "very small," but husband and wife planned to expand it so her children could eventually move there as well. Husband paid the mortgage payments on the Valley View property until 2019, at which time his brother split the monthly mortgage obligation with husband. The record indicates the Valley View property's "acquisition cost" was $359,000 in 2014. The original mortgage balance was listed as $287,989.

In 2014, wife opened a house cleaning business and husband managed the business's finances. Husband and wife worked together cleaning houses. During the marriage, husband also maintained their personal finances. The parties shared bank accounts; husband also had a bank account solely in his name, which he owned before the marriage and deposited funds into during the marriage. Husband stopped working with the cleaning business around 2018.

The parties separated in 2020, and husband filed a complaint for divorce in November 2021. Wife responded with an answer and counterclaim for divorce; she requested spousal support and equitable distribution.

At the time of the final hearing, wife was 59 years old and testified that she had pain in her back and legs that hindered her work as a house cleaner. Wife testified that her weekly income was approximately $400 and she required financial assistance from her children to pay her household bills. Wife had no savings or retirement accounts. Wife claimed an interest in the Valley View property because even though husband did not add her name to the title, he purchased it during the marriage and they intended to live there together.

Husband was 37 years old at the time of trial. He claimed that he had "no idea" what the value of the Valley View property was.[1] Husband worked primarily as a subcontractor, earning an average of $3,000 per month; husband also earned income from delivering food and other construction work. Husband testified that his total annual income for the year before the trial was approximately $106,000.

Husband contended that he was "financially stable" when he entered the marriage. In support of this assertion, husband sought to introduce financial records from 2008 and 2010 to trace his separate funds that were in his bank account before the marriage. Wife's counsel objected because the statements were too old and not from the years immediately before the 2012 marriage. The circuit court sustained wife's objections, finding the documents to be irrelevant.

At the time of the trial, husband had outstanding credit card debt, but conceded that the balances on the credit cards had "nothing to do" with wife. Rather, husband testified that he and

---

[1] During discovery, husband reported the fair market value of the Valley View property as "unknown."

wife used cash to pay for their marital expenses. Wife confirmed that she did not accrue credit card debt during the marriage.

At the conclusion of the testimony and presentation of evidence, the circuit court issued its ruling from the bench. Before awarding equitable distribution, the circuit court expressly considered the Code § 20-107.3(E) factors. The circuit court noted that the parties were married for 8 years, and husband was 37, while wife was 59.

After considering the statutory definitions of marital property and separate property, the circuit court determined that even though husband purchased the Valley View property with his brother, it was marital property because husband bought it during the marriage and did not receive it through inheritance or gift. The circuit court further held that under Code § 20-107.3(C), it did not have the authority to order the sale of the property because the Valley View property was not titled jointly in husband's and wife's names. Because husband claimed not to know the value of the Valley View property and there was little evidence of its value, the circuit court valued the property by considering "the sales price, the mortgage, the amount of money put into the property." The circuit court determined that husband used between $120,000 and $126,000 of marital funds to pay the mortgage. Based on this calculation, the circuit court awarded wife $60,000, which totaled "a little less than half" of the marital funds invested in the property.

In addition to the Valley View property, the circuit court considered the parties' other assets and debts. The circuit court classified three of the parties' bank accounts as marital property. At the time of the trial, the three bank accounts were valued at $43, $58, and $500, respectively. The circuit court determined that, at the time of the parties' separation, the three bank accounts were valued at $11.64, $670.91, and $12,541.45 and ordered the parties to divide equally the balance of the three accounts as of the date of their separation.

The circuit court found that husband had incurred the majority of the debts and liabilities. Based on husband's testimony that the debt belonged solely to him, the circuit court found that husband agreed to assume all of the credit card debt.

After the circuit court made its equitable distribution award, it considered wife's request for spousal support. The circuit court awarded wife $1,000 per month in spousal support for four years. The circuit court found the evidence of husband's income to be "very unclear," noting that it ranged "anywhere from" $4,000 monthly to $106,000 yearly. The circuit court found that husband's income was actually "somewhere in between." On the other hand, the circuit court found that the testimony regarding wife's income was "fairly accurate," and she earned between $400 and $500 weekly. In determining whether to award wife spousal support, the circuit court considered that wife sponsored husband's application for permanent residency, helped care for his parents, and assisted with the maintenance of the Valley View property. The circuit court also noted wife had health conditions that made it "difficult for her to work more than she [was] already." The circuit court further considered that husband "managed the finances during the marriage, and he managed those to his benefit," as evidenced by his use of marital funds to pay the mortgage of the Valley View property. After considering all the evidence, the circuit court found that husband had the ability to pay support and wife was in need of spousal support.

Both parties requested an award of attorney fees. The circuit court declined to award attorney fees to either party. On May 15, 2023, the circuit court entered a final decree of divorce incorporating its findings. Husband appeals.

ANALYSIS

I. Equitable Distribution

"[I]n reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in

weighing the many considerations and circumstances that are presented in each case." *Payne v. Payne*, 77 Va. App. 570, 596 (2023) (quoting *Stark v. Dinarany*, 73 Va. App. 733, 749-50 (2021)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court.'" *Id.* (quoting *Stark*, 73 Va. App. at 750). "The [trial] court's 'discretion is limited only in that the [trial] court must consider all of the factors in Code § 20-107.3(E).'" *Id.* (alterations in original) (quoting *Stark*, 73 Va. App. at 750). We will not overturn a circuit court's equitable distribution award absent "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)).

A. Valuation of Valley View Property

Husband first challenges the circuit court's valuation of the Valley View property. In rendering its equitable distribution ruling, a circuit court must (1) "classify the property," (2) "assign a value to the property," and (3) "distribute[ ] the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)." *Sobol v. Sobol*, 74 Va. App. 252, 273 (2022) (quoting *Fox v. Fox*, 61 Va. App. 185, 193 (2012)).

Husband acknowledges that the Valley View property is not separate property, as defined by Code § 20-107.3(A)(1). Husband argues, however, that the circuit court failed to make a finding as to the value of the property, as Code § 20-107.3(A) requires. Husband claims that the circuit court had to value the property before it could make an equitable distribution award. Husband further contends that if the court cannot make a valuation—no award can be made and wife cannot receive a remand calling for a "do-over" to attempt to prove what she failed to prove the first time. *See Bowers v. Bowers*, 4 Va. App. 610 (1987).

- 6 -

"A trial court has broad discretion to determine the value of assets." *Hoebelheinrich v. Hoebelheinrich*, 43 Va. App. 543, 556 (2004). "[T]he particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples." *Howell v. Howell*, 31 Va. App. 332, 339 (2000). Because valuation is heavily fact-dependent, "we give great weight to the findings of the trial court." *Id.* "In sum, 'the value of property is an issue of fact, not law.'" *Hoebelheinrich*, 43 Va. App. at 557 (quoting *Howell*, 31 Va. App. at 340); *see also Patel v. Patel*, 61 Va. App. 714, 722 (2013) (same).

In awarding wife a monetary award for equity in the Valley View property, the circuit court received evidence that husband had invested over $120,000 worth of marital funds into the property. The home had a value of $359,000 in 2014. Husband stated he did not know the value of the Valley View Property at the time of trial. The circuit court found this testimony regarding finances "less credible." The circuit court further explained, in granting wife a monetary award, as follows:

> And so we have a situation where the property is bought, not put in [wife's] name and is clearly marital property and he takes marital property, which is his income and pays a mortgage. So he takes marital property and pays the mortgage on marital property, but he doesn't want her to have any interest in the property. And I don't think that . . . is equitable.

*See Trivett v. Trivett*, 7 Va. App. 148, 151 (1988) (providing "[o]nce the property of the parties is properly classified as marital, the determination to grant a monetary award and the amount of the award is controlled by the equities and rights and interests of the parties in the marital property and not by legal title"). Husband argues that wife had the burden of proving the value of the house—and her failure to do so requires that she be denied any recovery on the property. *See Bowers*, 4 Va. App. at 619-20.

We have stated that "'Value' is a mercurial term." *Howell*, 31 Va. App. at 338. "Trial courts valuing marital property for the purpose of making a monetary award must determine from the evidence that value which represents the property's intrinsic worth to the parties . . . ."

- 7 -

*Bosserman v. Bosserman*, 9 Va. App. 1, 6 (1989). "The value of an item of marital property is its intrinsic worth to the parties: the worth to the husband and wife, the parties; the value to the marital partnership that the court is dissolving." *Howell*, 31 Va. App. at 338-39.

The circuit court here granted wife a monetary award equal to approximately one-half of the marital funds invested into the property, finding that wife was entitled to a monetary award, as permitted under Code § 20-107.3(D), for her share of the marital funds invested in the property. We agree that wife proved *at least* $126,000 of marital property was invested in the property and that the home likely had a value significantly higher than this sum. The home had a value of $359,000 in 2014, and there was no evidence it had lost value in Alexandria. However, husband was not the sole owner—he co-owned the property with his brother. Husband's failure to put a value on the property—and wife's lack of access to such information—left the court to fashion a value based on the available data. The court was within its discretion to fashion its award given husband's resistance to providing information mainly within his control—and the undisputed fact that $126,000 in marital property had been injected into the property. Considering the unique circumstances of this case, we hold that the circuit court did not abuse its discretion in awarding wife $60,000 for her interest in the marital property.[2]

### B. Financial Records

Husband next contends that the circuit court erred in refusing to admit his financial records from 2008 and 2010, which he argued were necessary for the "tracing of separate funds" in his bank accounts. Husband further contends that the evidence would have allowed him to trace his separate contributions to the Valley View property.

At trial, the circuit court sustained wife's objection to the introduction of the documents, finding that they were not relevant. "[W]e review the circuit court's ruling regarding the admission

---

[2] Wife has not assigned cross-error or claimed that the valuation should be higher.

of evidence for an abuse of discretion." *Toraish v. Lee*, 293 Va. 262, 272 (2017). Husband did not offer financial documents from 2011 or 2012. Thus, even if the decade-old records had been introduced, there would have been a significant gap between the 2008-10 documents and the date of the marriage and the later purchase of the Valley View property. As such, the circuit court did not abuse its discretion in finding the financial records from 2008 and 2010 irrelevant to any argument of retraceability.

Husband had "the burden of proving retraceability" because he was claiming a separate interest in both the bank accounts and the Valley View Property. *von Raab v. von Raab*, 26 Va. App. 239, 248 (1997). Husband, however, only offered statements from 2008 and 2010, not documents, standing alone, from the time period immediately before the marriage. We find the circuit court did not abuse its discretion in refusing to admit the 2008 and 2010 statements.

### C. Bank Accounts

The parties had three joint bank accounts. Husband argues that the circuit court erred by awarding even splits of all bank account balances as of the date of separation without considering the factors in Code § 20-107.3(E). We find that the circuit court explicitly considered the Code § 20-107.3(E) factors in making the award.

We further reject husband's assertion that the circuit court erred in awarding "even splits of all bank account balances as of the date of separation without . . . [making] findings with respect to the waste of marital funds from the identified bank accounts." He suggests any division should have occurred as of the date of the hearing—when the accounts (which were under husband's control) contained much less money. While the court did not make a specific finding of waste, it is clear that husband controlled the family banking and that certain balances dropped *precipitously*

under his watch between the date of separation and the date of the hearing. Again, on this record, we uphold the circuit court's ruling.[3]

## D. Credit Card Debt

Husband next contends that the circuit court erred in concluding that the credit card debt incurred during the marriage was his separate debt. Although he noted his objection to the circuit court's ruling on the final decree of divorce, he admitted during the hearing that the balances on the credit cards had "nothing to do" with wife. Husband testified that he and wife paid in cash for marital expenses. Wife's counsel asked husband directly several times whether wife was "responsible" for the credit card debt, and he conceded she was not. The circuit court determined that "[b]ased on the testimony of the [h]usband on the stand, he will assume all credit card debt that remains." Simply put, there was abundant evidence upon which the circuit court could base this decision and we uphold it.

## II. Spousal Support

Husband challenges the circuit court's award of spousal support. "The trial court has 'broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion.'" *Wyatt v. Wyatt*, 70 Va. App. 716, 719 (2019) (quoting *Giraldi v. Giraldi*, 64 Va. App. 676, 681-82 (2015)). "When a court awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the evidence, its determination 'will not be disturbed except for a clear abuse of discretion.'" *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 435 (2020) (quoting *Dodge v. Dodge*, 2 Va. App. 238, 246 (1986)). "In determining the appropriate amount of spousal support, the trial court must consider

---

[3] Husband, in any event, offers no legal authority to support his argument. Rule 5A:20(e) requires the appellant to provide "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "An appellant's failure to strictly adhere to the requirements of Rule 5A:20(e) permits this Court to treat an issue as waived." *Winters v. Winters*, 73 Va. App. 581, 597 (2021).

the needs of the requesting party and the other spouse's ability to pay." *Wyatt*, 70 Va. App. at 719 (quoting *Alphin v. Alphin*, 15 Va. App. 395, 401 (1992)). In addition, Code § 20-107.1(F) provides that "[i]f the court awards periodic support for a defined duration, such findings shall identify the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the court which support the award."

Husband argues that the circuit court did not identify the statutory factors upon which it relied in making the spousal support determination. Contrary to husband's argument, however, in awarding spousal support, the circuit court discussed the Code § 20-107.1(E) factors. Specifically, the circuit court highlighted the parties' income and finances, wife's health and ability to work, as well as the assistance she provided while she lived in the Valley View Property. The circuit court also noted husband's ability to pay and wife's need for support. The circuit court also attached to the final decree of divorce a written explanation of why it awarded spousal support to wife for a defined duration. The circuit court found that husband had "abruptly removed himself from the family business," requiring wife "to begin a rebuilding process." The circuit court further found that four years was "an appropriate time" for wife "to grow her business back to its former earnings."

Upon review of the record, we conclude the circuit court did not abuse its discretion in awarding spousal support. Wife clearly testified about her need for support; her weekly income was approximately $400 and she required financial assistance from her children to pay her household bills. Husband testified to a range of income; although his evidence was "unclear," it supported the circuit court's conclusion that his income far exceeded wife's and that he had the

- 11 -

ability to pay.[4] The record supports the circuit court's factual findings that wife's back pain hindered her ability to work and that wife contributed to the well-being of the family by caring for husband's parents and helping take care of the Valley View property. The circuit court considered the statutory factors in Code § 20-107.1(E) and complied with the requirements of Code § 20-107.1(F); the circuit court did not err by awarding $1,000 in monthly spousal support to wife for a period of four years.

### III. Attorney Fees

Wife requests an award of attorney fees and costs incurred in this appeal. "The decision of whether to award attorney[] fees and costs incurred on appeal is discretionary." *Koons v. Crane*, 72 Va. App. 720, 742 (2021) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)). In making such a determination, the Court considers all the equities of the case. Rule 5A:30(b)(2)(C). While wife has prevailed in this appeal, husband has raised legitimate and non-frivolous issues. The positions of both parties were well-presented. After considering the record before us and all the equities of the case, we deny wife's request for appellate attorney fees and costs.

### CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*

---

[4] Husband alleges for the first time on appeal that the circuit court erred in failing to consider the parties' income tax records in awarding spousal support. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)); *see* Rule 5A:18 . As husband did not raise this challenge in the circuit court, we cannot consider the argument for the first time on appeal.